EVANICH, Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*November 4, 1940—March 11, 1941.*

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat*.

For the respondent there were briefs by *Seher & Seher* of Milwaukee, and oral argument by *Walter G. Seher*.

The following opinion was filed December 3, 1940:

FAIRCHILD, J.   In attempting to cross West National avenue to a safety island at South Thirty-Eighth street, the plaintiff's deceased was struck by a streetcar and killed. He was intending to become a passenger on the eastbound car. As he left the north curb of West National avenue he signaled to the motorman who was then some two hundred feet away from the place of collision. The evidence is that the car was traveling at a speed which would indicate there was to be no stop at the point where the deceased apparently was desirous of boarding the car. There is testimony that the car did pick up a passenger at Forty-Fourth street, which was six blocks west of the scene of the accident, but that that was the last stop until after the accident. The car did slow up as it approached the place where South Thirty-Eighth street comes into West National avenue from the south, but its speed was immediately increased as it crossed this portion of South Thirty-Eighth street. The deceased having started from a point where ·the street enters the avenue from the north was struck before he completely crossed the space between the rails of the eastbound track.

There is evidence that the motorman failed to keep a proper lookout. The jury found the deceased guilty of negligence with respect to entering upon the track ahead of the approaching car. But in comparing the negligence of the motorman with that of the deceased the jury fixed the percentages at

twenty for the deceased and eighty for the motorman. Can it be possible that such a difference existed? The deceased was a pedestrian who had a view of the car. Under the evidence accepted by the jury as controlling, it is apparent that the negligence of the deceased and that of the motorman were so like each other in kind and character or so nearly equivalent as to be comparable as a matter of law. *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 245 N. W. 97; *Brown v. Haertel,* 210 Wis. 345, 244 N. W. 630; *Callaway v. Kryzen,* 228 Wis. 53, 279 N. W. 702. There is no question of the negligence of each of the actors under the interpretation of the evidence by the jury.

Some acts have a quality of effectiveness which place them in a category as contributing and controlling causes of a given result, and the acts themselves are of such substance as to furnish standards affording a reasonable method for comparison. If the combination of action by each actor resulted in a race for which each may be said to be responsible, the act of each would stand on the same basis as to responsibility.

The motorman did not stop because he did not see the deceased. The deceased entered upon the streetcar tracks in the face of danger from the oncoming car. The jury rejected the motorman's explanation that the way the collision came about was that the deceased came suddenly from behind an automobile and ran upon the track in front of the car which would have freed the motorman from the charge of negligence. By reason of the rejection of that explanation we are to regard the facts to be that the deceased came across the street with nothing to interfere with his seeing the streetcar and without the motorman's seeing him. It then becomes evident that the motorman failed to maintain a proper lookout, but it is also evident that the deceased has equally failed to perform his duty in the matter. Either he did not see the car, or seeing it he heedlessly invited disaster by hurrying in

front of it. His desire to become a passenger on that particular car did not relieve him from the obligation of exercising ordinary care for his own safety.

While the jury found the motorman guilty of negligence as to speed, control, and lookout, the physical facts as well as the oral evidence considered worthy by the jury eliminate speed and control as distinct acts of negligence and leave them as factors only as they may be included in lookout. The speed was not excessive or illegal, and the fact that the appearance of the deceased upon the track and the impact were almost simultaneous leaves no occasion to consider failure of control, in and of itself, as causal negligence. Even the most proper control could not have avoided the accident at that late time.

So we have a case where the conduct of the deceased is to be weighed against that of the motorman. The latter had the right of way. He was proceeding at a lawful rate of speed. For some reason he failed to see the deceased until his car was within two feet of the deceased. The deceased must have seen the streetcar and must have been aware that it was not stopping as he desired it to do. Placing himself in the zone of danger, if not deliberately reckless, must have been due to a belief that he could outstrip the car and reach safety across the track. Opportunity for observation existed. Negligence of the deceased was as much a cause in bringing about the collision as the conduct of the motorman. A vivid description of the affair was given by a witness for the plaintiff who was at a filling station about one hundred eighty-seven feet distant from the point of collision, but who had some opportunity of witnessing the action of both motorman and deceased. He testified:

"As I was standing there, there was a man on the northeast corner of Thirty-Eighth street. There is a place of business there, a tavern and living quarters upstairs. The man started directly west from the east walk on Thirty-Eighth street,

directly across until he approached the curb and then he went diagonally to the west walk, going south from the west walk over to the island. . . .

"As he turned south there, he motioned with his right hand over his head. It was just a motion, a side motion. He waved his arm until he disappeared from my vision. . . . I noticed a streetcar proceeding on National avenue about this time. . . .

"As I said he was hurrying across that walk and had approached the south track and he was on the track as everything went dark. He disappeared. . . .

"I know that this man was going faster than a walk; just a little quicker step. That is about all. It is a run, if you are not walking and I was wondering whether he was going to make it. . . .

"*Q.* You didn't watch him after the car passed the point where you were standing, did you? *A.* Yes. I watched the car, the operator and the man too. Naturally when there is a man running a race, you are interested to see whether he will make the connection.

"*Q.* You saw Mr. Evanich running a race with the streetcar? *A.* It is a term you can use. He wasn't running a race. He was running crossways to make the car."

Because it appears under the particular facts of this case that the negligence of the deceased is at least equal to that of the defendant, it must be held as a matter of law that there can be no recovery. *Peters v. Milwaukee E. R. & L. Co.* 217 Wis. 481, 259 N. W. 724; *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 262 N. W. 581; *Geyer v. Milwaukee E. R. & L. Co.* 230 Wis. 347, 284 N. W. 1; *Patterson v. Chicago, St. P., M. & O. R. Co.* 236 Wis. 205, 294 N. W. 63.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on March 11, 1941.