Nye, Appellant, vs. The Milwaukee Electric Railway & Transport Company, Respondent.* [Two cases.]

*October 13—November 14, 1944.*

---

* Motion for rehearing denied, with $25 costs, on January 16, 1945.

*Harry S. Sicula*, attorney, and *Wm. B. Rubin* of counsel, both of Milwaukee, for the appellants.

For the respondent there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat*.

FAIRCHILD, J.   In a well-reasoned opinion which gives a review of the facts and law, the learned trial judge said in part:

"There is a conflict in the evidence with respect to the motorman's version that the impact resulted when the plaintiff was in the act of hurriedly crossing the railway tracks in a westerly direction after avoiding a collision with a northbound automobile traveling within the east half of the street. Passing the weight of that testimony in this decision, the court is, however in duty bound, upon plaintiff's own version, to hold that the responsible cause of her injury was her own conduct in entering the zone of danger after she had crossed both tracks and reached the zone of safety to the west of the most westerly rail.   It is considered unjudicial to hold otherwise and to submit that branch of the case to the jury, 'suggesting thereby that there is room within the range of common sense for a decision either way, thus inviting what might afterwards appear to be a perverse verdict.'

"According to plaintiff's testimony, she had fully crossed both tracks, stopped about fifteen seconds, turned around, looked at the oncoming streetcar and a clock in a store on the east side of the street and then took several full-length brisk steps in a northeasterly direction until about one half of her person was within the known zone of danger, *not at the side* but directly in *front,* of the car.   Her face was cut by broken glass over a sign attached to the front of the car some distance from the right corner.   Her statement is that she 'walked up to meet it' and was familiar with its overhang, knowing that the side of the streetcar 'extends beyond the rails,' that 'it is wider than the track,' that it is, 'I judge, about a foot beyond.'   She also knew that the entrance door opened to the *side* of the streetcar and not to its *front.*   The time needed to walk up and meet the car, as she states was sufficient to enable her to step aside into the place of safety and thus avoid contact with the front of the passing car.   Had the car stopped, she would have been obliged to again step to the west to clear the right corner of the car and reach its front door.   It may fairly be said that she realized that the car would not stop and made a desperate effort to apprise the motorman of her anxiety to board the car by assuming a

place at which, as she heedlessly concluded, she could accomplish her purpose. . . .

"Considering the circumstances in their entirety, it is fair to hold that her conduct created a sudden emergency in which the motorman was not obliged to adopt the best means of avoiding collision. In this connection, it must also be borne in mind that a streetcar runs upon fixed tracks from which the operator could not deviate in order to avoid injury.

"Assuming, but not deciding, that the issues as to the motorman's lookout and control are for the jury, it conclusively appears that under the particular facts which have been reviewed after careful study of the record, plaintiff's negligence is at least equal to that of the motorman. Upon that ground, it must also be held as a matter of law that plaintiffs are not entitled to recover damages from the defendant."

The accident occurred about 5:30 a. m. in the morning on Tuesday, May 18, 1943, on a rainy, misty, and dark day.

Appellant testified that she intended to board the southbound streetcar at the northwest corner of Juneau avenue and North Twenty-Seventh street; that when she arrived at the northeast corner of the intersection she observed an auto approaching from the south going north, and on looking toward the north, she saw the streetcar she intended to board, entering North Twenty-Seventh street one block north; whereupon she waved to the occupants of the auto to stop to enable her to cross. This they did, and she walked hurriedly across the intersection, proceeding past the southbound tracks to a point about a yard west of the tracks, where she turned around, hesitated for approximately fifteen seconds, and then, since she was situated a few feet south of the car stop, took two steps to the northeast in order to meet the car. At that instant she was struck by the "overhang" of respondent's car.

Occupants of the northbound auto testified that appellant waved to them to stop but that it was unnecessary for them to do so in order to enable her to cross; that she then proceeded quickly across the street and was already across the

southbound track when they had passed the intersection. Appellant also testified that the streetcar began to slow up about twenty feet north of the intersection leading her to believe that it intended to stop for her and causing her to approach it in order to be ready to board it.

The motorman, on the other hand, testified that he was traveling south at a speed of about fifteen miles an hour as he approached the intersection; that he first saw appellant when he was about fifteen feet north of the north crosswalk; that she was jumping out of the way of the automobile; that as soon as he saw that she was going to run into the path of his car, which was then only about ten feet away, he set the emergency brake, rang his gong, and made every effort to stop; that this was, however, impossible to do before hitting her, and that the car did not finally come to a stop until it had traveled about fifty-one feet. Several occupants of the car testified to hearing the ringing of the warning bell and to noticing the motorman grab for the controls.

Upon this appeal we do not accept the version of the accident as presented by respondent's testimony but the opposing version and as appellants relate it. It appears that the trial court was justified in concluding that the appellant's negligence was as a matter of law at least equal to that of respondent and hence required direction of a verdict for respondent.

According to appellant's own story, she had already reached a place of safety on the west side of the car tracks when she walked to meet the car, placing herself within the range of the "overhang" of the car. She testified that she was familiar with the existence of the "overhang" of the car; that she knew that the car extended approximately a foot beyond the rails. She testified to observing the streetcar slacken its speed and stepping forward to be ready to board it. She took only two steps before she was struck. It was unnecessary for her to step within the path of the car to prepare to enter. In any event, she placed herself within the zone of risk creating the

emergency giving rise to the collision. The motorman testified that he did not see appellant in time to stop his car. While failure to stop to pick up a passenger might subject a motorman to disciplining by his employer, some unusual incidents would have to be connected with the failure to constitute legal negligence in a tort case. But if some negligence on the motorman's part may be predicated on his failure to observe plaintiff sooner, the fact remains that she saw the car and in the exercise of ordinary care could easily have avoided it. One who voluntarily leaves a place of safety to enter a zone of danger remaining there until hit by an oncoming car cannot shift the larger proportion of responsibility for the collision because of the motorman's failure to see him in time to stop the car. Appellant saw the car and knew she was in reach of the car's structure. It was her act that subjected her to the injury. She was not relieved of her duty to exercise ordinary care by supposing the car was going to stop. The law as declared in *Evanich v. Milwaukee E. R. & L. Co.* (1941) 237 Wis. 111, 295 N. W. 44, applies here. In that case, the ruling was that where the injured person was struck attempting to pass in front of and with nothing to interfere with his seeing the approaching streetcar, although the motorman did not see him until he was on the track two feet in front of the car; the causal negligence of the injured man in entering the track in front of the approaching streetcar was equal as a matter of law to the causal negligence of the motorman in failure to keep a proper lookout. It is true that in that case the circumstances were such that the injured person must have been aware that the car was not stopping for him while here plaintiff testified that the streetcar had given indication of stopping by "starting to slow down." Nevertheless, the appellant (the injured person in our case) was in a position of safety, and left it under circumstances such that immediately after she had taken the steps toward the car, she was

struck. She had seen the car. The situation was under her control so far as it concerned her safety, and in the exercise of ordinary care she would have avoided the accident.

In *Peters v. Milwaukee E. R. & L. Co.* (1935) 217 Wis. 481, 259 N. W. 724, there was evidence that the motorman had given indication that he intended to stop, upon which plaintiff relied. Nevertheless, the rule was adhered to and a verdict for defendant was properly directed because Peters had not assured himself of safety and had proceeded into the zone of danger.

Appellant was under a certain and absolute duty to observe and heed the danger that was in sight. The danger line was so narrow and might have been avoided with so little effort, that the law justly thrusts the obligation of exercising that effort upon her. Her failure to use common prudence has the characteristics of negligence constituting a full equivalent, at least, of any negligence that can be charged to respondent. The acts of the motorman and those of appellant are to be compared. The motorman did not see her in time; she saw the car and needlessly placed herself where she was certain to be struck if the car continued in motion. The streetcar tracks, the presence of a moving car certainly supplied a warning of danger that she would face if she entered the pathway of the car. Her unnecessary and easily avoidable stepping into that pathway in disregard of all that warning was at least the equal in negligence of any other cause contributing to her injury.

The court properly found the negligence of appellant to be at least equal to respondent's as a matter of law.

*By the Court.*—Judgment affirmed.

MARTIN, J. (*dissenting*). I am of the opinion that the issue of comparative negligence, under all the circumstances disclosed by the evidence, should have been submitted to the

jury; and that the trial court erred in holding that plaintiff's negligence was, as a matter of law, at least as great as that of the defendant's motorman.

Mrs. Nye had crossed both car tracks on North Twenty-Seventh street, and had taken a position in a zone of safety. She was then several feet south of the point at which south-bound cars stopped to take on or let off passengers. She had taken the southbound car at its regular stopping place on the average of twice a week. On the morning in question, as the car approached the regular, stopping place it slowed down, which led her to believe that the car would stop as usual. Believing that the car was about to stop at the usual place, she proceeded in a. northeasterly direction a distance of five or six feet to get in position to enter the car. It was a rainy, dark morning, and she carried her umbrella and brief case in her left hand. She held her car pass in the right hand so as to exhibit same to the motorman upon entering the car. The car did not come to a stop, and as it passed her the overhang of the car struck her, causing her injuries.

In *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 407, 245 N. W. 97, speaking of comparative negligence, the court said:

" 'If the negligence of each consisted simply in a failure to look, and they both had ample opportunity to discover each other, it might be that their negligence would have to be held equal.' However, it is evident that the instances in which a court can say as a matter of law that the negligence of the plaintiff is equal to or greater than that of the defendant will be extremely rare, and will ordinarily be limited to cases where the negligence of each is of precisely the same kind and character."

In view of the fact that Mrs. Nye had regularly taken the car at this corner for some time past, and had been accustomed to it stopping at her signal; and in view of the further fact that, on this particular occasion, in apparent response to her signal, the car slowed up as though to make a stop, the jury

could conclude that Mrs. Nye had reason to assume that the car was going to stop. She was under the necessity of advancing in a northeasterly direction from where she stood to the usual place where passengers entered the car. Had the car stopped where it was supposed to, her invasion of its path would not have resulted in her injury.

In *Brennan v. Chicago, M., St. P. & P. R. Co.* 220 Wis. 316, 323, 265 N. W. 207, the court said:

"It has been held several times, since the enactment of the comparative-negligence law, that where the negligence of the parties differs in kind and quality this court will not attempt to classify, evaluate, and compare them." See cases cited.

The cases of *Evanich v. Milwaukee E. R. & L. Co.* 237 Wis. 111, 295 N. W. 44, and *Peters v. Milwaukee E. R. & L. Co.* 217 Wis. 481, 259 N. W. 724, cited in the majority opinion, are distinguishable from the instant case. Assuming some causal negligence on the part of Mrs. Nye, her negligence is not of the same kind and character as the negligence of the motorman.

In the light of the evidence, a jury could properly find that while plaintiff was causally negligent in some degree, her negligence was less than that of the motorman who certainly could be found negligent as to lookout, management and control. A new trial should be ordered.

I am authorized to state that Mr. Justice WICKHEM concurs in this dissent.